UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ROBERT GEAN CONKLIN,

                      Petitioner,

v.

LORI GIDLEY,

                      Respondent.

_____/

Case No. 1:14-cv-1124

Honorable Gordon J. Quist

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Robert Gean Conklin is incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility in Kincheloe, Michigan. Following a jury trial in the Eaton County Circuit Court, Petitioner was convicted of two counts of first-degree criminal sexual conduct (CSC-I), Mich. Comp. Laws § 750.520b, and two counts of second-degree criminal sexual conduct (CSC-II), Mich. Comp. Laws § 750.520c, in two consolidated cases involving three victims. On July 28, 2011, the court sentenced Petitioner as a habitual offender-fourth offense, Mich. Comp. Laws § 769.12, to concurrent prison terms of 30 to 60 years for each CSC-I conviction and 15 to 30 years for each CSC-II conviction.

On October 27, 2014, Petitioner filed his habeas corpus petition raising three issues: (1) insufficient evidence; (2) ineffective assistance of trial counsel; and (3) ineffective assistance of appellate counsel. Recognizing that he had failed to exhaust his state court remedies with respect to at least his second and third habeas issues, Petitioner moved the Court to stay this action

and hold it in abeyance pending exhaustion.  By order entered December 5, 2014, the Court granted Petitioner's motion.  (Order, ECF No. 5.)

Petitioner returned to the state trial court.  He filed a motion for relief from judgment under Michigan Court Rule 6.502 raising four issues.  The trial court denied relief by opinion and order entered January 27, 2015.  (Eaton Cty. Cir. Ct. Op. & Order, ECF No. 13-20.) Petitioner filed a separate motion challenging the validity of costs imposed as part of the judgments of conviction.  By opinion and order entered March 22, 2016, the trial court rejected Petitioner's challenge to the costs imposed.  (Eaton Cty. Cir. Ct. Op. & Order, ECF No. 13-22, PageID.936-937.)  Petitioner filed applications for leave to appeal the trial court's decisions in the Michigan Court of Appeals and the Michigan Supreme Court.  Those courts denied leave by orders entered July 25, 2016, and May 2, 2017.  (Mich. Ct. App. Order, ECF No. 13-21, PageID.862; Mich. Order, ECF No. 13-22, PageID.885.)

Petitioner, having exhausted his state court remedies, moved to reopen this case. The Court granted Petitioner's motion and directed him to file an amended petition.  (Order, ECF No. 8.)  The amended petition raises five issues, paraphrased as follows:

I.      Petitioner was denied his Sixth Amendment right to effective assistance of trial counsel where counsel failed to investigate and failed to meet with Petitioner prior to trial and failed to object to the trial court's imposition of costs where the trial court failed to assess Petitioner's future ability to pay the costs.

II.     Petitioner was denied his Sixth Amendment right to effective assistance of appellate counsel where appellate counsel failed to raise ineffective assistance of trial counsel, insufficiency of the evidence, the speedy trial issue, and the improper imposition of costs.

III.    Petitioner was denied his constitutional right to a speedy trial.

IV.     Petitioner's convictions rest on constitutionally insufficient evidence, a violation of this Fourteenth Amendment due process right.

2

     V.     Petitioner was denied his Fourteenth amendment rights to equal protection and due process where the trial court failed to assess Petitioner's future ability to pay court-imposed crime victim rights and state minimum costs.

(Am. Pet., ECF No. 9, PageID.87-93.)  Respondent has filed an answer to the petition (ECF No. 12) stating that the grounds should be denied because they are procedurally defaulted and/or meritless.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are without merit.  Accordingly, I recommend that the petition be denied.

## Discussion

### I.    Factual Allegations

Petitioner was convicted of one count of CSC-I for penile/vaginal penetration of a 10-year-old girl during 2009.  He was convicted of a second count of CSC-I for digital/vaginal penetration of the same girl, TiM.  Petitioner was convicted of one count of CSC-II for sexual touching of TiM's 8-year-old sister, TaM.

TiM, TaM, and their brother SM stayed, at least some of the time, with their parents in a fifth-wheel trailer on a multiple-acre property in Eaton County.  Petitioner resided in another travel trailer that was parked on the property.  Petitioner would often watch one, two, or all three of the children in his camper.

The trailer and the camper were parked on the property of Robert Columbia.  He and his wife lived in a home on the property.  Their grandchildren were frequent guests at the home.  Petitioner was also convicted of one count of CSC-II for sexual touching of Columbia's 5-year-old granddaughter ST.

The jury heard from TiM, TaM, and their parents; ST, her sister, her cousin, her aunt, her mother, her grandfather, and her grandmother; the investigating officer; the CPS investigator; the doctor who interviewed all three girls; the psychologist who evaluated TiM and

3

TaM; and the Michigan State Police laboratory scientist who completed a report regarding the results of DNA testing.  The testimony from TiM and TaM recounted multiple instances of sexual abuse by Petitioner; however, the prosecutor did not amend the charges to include any instances other than those identified above.  Through the testimony of TiM and TaM—and the testimony of those persons to whom TiM and TaM disclosed the sexual abuse—the jury heard that TiM and TaM had been subjected to sexual abuse by several persons, including several relatives, in addition to Petitioner.

Petitioner seized upon the heartbreakingly broad, and therefore seemingly fantastic, scope of the sexual abuse reported by TiM and TaM, and the inconsistencies that emerged in their disclosures as they reported to different people, to challenge the credibility of their allegations against Petitioner.  The jury, however, found the allegations of TiM, TaM, and ST against Petitioner to be credible.  After deliberating for five hours, the jury found Petitioner guilty on all charges.

Petitioner, with the assistance of counsel, appealed his convictions raising one issue: the convictions were against the great weight of the evidence.  (Pet'r's Appeal Br., ECF No. 13-14, PageID.587.)  The court of appeal denied Petitioner's motion for remand and, by per curiam opinion, affirmed his convictions.  (Mich. Ct. App. Order, ECF No. 13-14, PageID.563; Mich. Ct. App. Op., ECF No. 13-14, PageID.525-526.)  Petitioner then filed a pro per application for leave to appeal in the Michigan Supreme Court raising the "great weight" issue, a speedy trial issue, and a claim that the trial and arraignment transcripts were inaccurate.  By order entered July 30, 2013, the Michigan Supreme Court denied leave to appeal.  (Mich. Ord., ECF No. 13-15, PageID.608.)

Petitioner then filed his initial petition in this Court and the case proceeded as described above.

II.    AEDPA Standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."   28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381-382; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III.    Ability to Pay Costs

Petitioner complains that the imposition of costs violated his due process and equal protection rights because the trial court failed to consider Petitioner's ability to pay. This is a slightly different challenge than the one he raised in the state court. There, Petitioner complained that the imposition of costs was not authorized by statute. The state court rejected that claim:

Defendant cites MCL 769.1k(1)(b)(ii) and states that courts only have the authority to impose costs that the legislature has separately authorized by statute.  However, Defendant's argument lacks merit.  Defendant was never ordered to pay general court costs in either file.  Defendant was only ordered to pay the crime victim's rights assessment and minimum state costs, which are both separately authorized by statute.

Specifically, MCL 780.905(1)(a) states that the Court shall order each person convicted of a felony to pay $130 for a crime victim's rights assessment.  Further, MCL 780.905 states that the Court shall order a defendant to pay on crime victim's rights assessment per criminal case.  Therefore, the $130 crime victim's rights assessment was authorized by law and proper for both of Defendant's files.

Next, MCL 769.1j states that the Court shall order each person convicted of a felony to pay minimum state costs not less than $68 for a felony conviction.  Therefore, the $204 minimum state costs for the three felony convictions in File No. 11-020116-FC was proper, and Defendant's $68 minimum state costs was proper for File No. 11-020032-FH.  For these reasons, Defendant's costs were authorized by statute and valid.

(Eaton Cty. Cir. Ct. Op. & Order, ECF No. 13-22, PageID.936-937.)

In his applications for leave to appeal, Petitioner switched his focus to "ability to pay."  In the appellate courts he argued that an inquiry into ability to pay is required by *People v. Cunningham*, 852 N.W.2d 118 (Mich. 2014).  (Pet'r's Appl. for Leave to Appeal, ECF No. 13-21, PageID.870-871.)   A review of that decision does not support Petitioner's reliance upon it.  *Cunningham* stands for the proposition that forms the basis for the trial court's opinion: courts only have the authority to impose costs that the legislature has separately authorized by statute.  *Cunningham*, 852 N.W.2d at 125 ("[W]e hold that MCL 769.1k(1)(b)(ii ) provides courts with the authority to impose only those costs that the Legislature has separately authorized by statute.") (footnote omitted).  Undoubtedly, that is why the appellate courts denied leave to appeal on this issue.

Why the state court denied relief, however, is immaterial because Petitioner's claim is not cognizable on habeas review.  In *Washington v. McQuiggin*, 529 F. App'x 766

(6th Cir. 2013), the Sixth Circuit Court of Appeals explained the limits of habeas jurisdiction with

regard to orders to pay fines or restitution:

> Under § 2254, subject matter jurisdiction exists "only for claims that a person 'is in custody in violation of the Constitution or laws or treaties of the United States.'" *Dickerson v. United States*, 530 U.S. 428, 439 n.3 (2000) (quoting 28 U.S.C. § 2254(a)). In general, fines or restitution orders fall outside the scope of the federal habeas statute because they do not satisfy the "in custody" requirement of a cognizable habeas claim. *See United States v. Watroba*, 56 F.3d 28 (6th Cir. 1995) (holding that § 2255 does not grant subject matter jurisdiction over restitution orders); *Michaels v. Hackel*, 491 Fed.Appx. 670, 671 (6th Cir. 2012) (stating that a fine is not cognizable under § 2254 and citing *Watroba*, 56 F.3d at 29); *see also Bailey v. Hill*, 599 F.3d 976, 979 (9th Cir. 2010) (holding that fines and restitution orders are not cognizable under § 2254); *Washington v. Smith*, 564 F.3d 1350, 1350-51 (7th Cir. 2009) (same); *Tinder v. Paula*, 725 F.2d 801, 804 (1st Cir. 1984) (collecting cases); Randy Hertz & James S. Liebman, 1 Federal Habeas Corpus Practice and Procedure § 8.2(e) (6th ed. 2012). Further, "collateral relief from a noncustodial punishment, such as a fine or restitution order, is not made readily available to a defendant just because he happens at that time to also be subject to custodial penalties." Brian R. Means, Federal Habeas Manual § 1:21 (2012 ed.). For habeas purposes, it is difficult to distinguish—and Washington does not attempt to distinguish—an order imposing attorney's fees from a fine or restitution order. Although the question of whether a claim satisfies the "in custody" requirement is to some extent one of degree, *Nelson v. Campbell*, 541 U.S. 637, 646 (2004), a fee-repayment order falls outside of even "the margins of habeas," *id.*, because it is "not a serious restraint on . . . liberty as to warrant habeas relief." *Tinder*, 725 F.2d at 805; *Bailey*, 599 F.3d at 979 (quoting *Tinder*).

*Washington,* 529 F. App'x at 772-73; *see also Kennedy v. Nagy*, No. 18-1463, 2018 WL 3583212,

at *2 (6th Cir. July 12, 2018) ("Kennedy argues that the trial court erred by ordering him to pay

restitution, court costs, and attorney's fees without first considering his financial situation . . . these

claims are not cognizable in a federal habeas proceeding because noncustodial punishments do not

satisfy the 'in custody' requirement of § 2254."). Accordingly, Petitioner's habeas challenge to

the costs imposed upon him is without merit because it is outside the scope of the federal habeas

statute.

IV.    Procedural Default

Petitioner raised Habeas Issues I-IV for the first time in his motion for relief from judgment.  The trial court refused to consider any of Petitioner's issues because he had failed to raise them on his direct appeal and had failed to establish either good cause for that failure or resulting prejudice.  (Eaton Cty. Cir. Ct. Op. & Order, ECF No. 13-20, PageID.860-861.)  The court rejected Petitioner's claims under Michigan Court Rule 6.508(D)(3).  (*Id.*)

When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982).  To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim.  *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster*, 324 F.3d at 436-37; *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001).  In determining whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim. *See Ylst*, 501 U.S. at 803; *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).  Here, the last reasoned state-court decision is the trial court's opinion and order resolving Petitioner's motion for relief from judgment.

There is no question that Petitioner failed to comply with the requirement to raise his post-judgment motion issues in the Michigan Court of Appeals on direct appellate review; thus, he failed to follow the state procedural rule.  The state court expressly relied upon Petitioner's

default in denying his claim.  It is also beyond dispute that the procedural rule is an adequate and independent ground for denying relief.  A rule is an adequate and independent ground when it was "firmly established and regularly followed" at the time of the asserted procedural default.  *Rogers v. Howes*, 144 F.3d 990, 992 (6th Cir. 1998) (citing *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)).  Mich. Ct. Rule 6.508(D)(3) "was firmly established and regularly followed . . . and was an adequate and independent state ground for denying review." *Gates v. Hoffner*, No. 17-2198, 2018 WL 1614261, at *2 (6th Cir. Mar. 23, 2018) (citing *Simpson v. Johnson*, 238 F.3d 399, 407 (6th Cir. 2000)).

If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice.  *See House v. Bell*, 547 U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52.  The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence.  *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.  *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).  Petitioner may contend he is actually innocent; however, he does not offer any new reliable evidence to support his claim.  Accordingly, to avoid the procedural default bar, Petitioner must show cause for his default and resulting prejudice, coincidentally the same showing he was required to make under Michigan Court Rule 6.508(D)(3) to convince the state trial court to consider his claims.

Petitioner offers as cause here the same cause he offered in the state trial court: the ineffective assistance of his appellate counsel.  In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

In evaluating the effectiveness of Petitioner's appellate counsel, the state trial court looked to the merits of Petitioner's defaulted claims, concluded they were without merit, and found it was not unreasonable for appellate counsel to forego such frivolous claims.  To evaluate whether the trial court's determinations are factually reasonable on the record and legally reasonable applications of *Strickland*, this Court must examine, at least to some extent, the merits of those claims.  Under the circumstances, simply addressing the merits at the outset may be simpler.

11

The United States Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits.  *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)).  *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.")).  Where, as here, the procedural default issue raises more questions than the case on the merits, the Court may assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default.  *See Hudson*, 351 F.3d at 215-16; *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).

V.    Speedy Trial

Petitioner was detained in connection with these charges on November 29, 2010. (Apr. 15, 2011, Status Conference Tr., ECF No. 13-5, PageID.259; *see also* Response to Mot. for Relief from J., ECF No. 13-19, PageID.703-706, 723-729, 741-759.)[1]  His trial commenced on June 27, 2011.

In the Michigan state courts, the right to a speedy trial is guaranteed by the United States constitution, U.S. Const. amend VI; the Michigan constitution, Mich. Const. 1963 art.1,

---

[1] Petitioner notes correctly that he was arrested during March of 2010 and remained incarcerated after his arrest. Petitioner ignores the fact that he was arrested for and charged with violation of sex offender registration requirements. (Response to Mot. for Relief from J., ECF No. 13-19, PageID.703-706, 723-729, 741-759.)  He entered a plea of guilty to that charge on August 5, 2010, on the eve of trial.  (*Id.*)  He was sentenced to 300 days' imprisonment and served his sentence in the county jail while awaiting trial for the charges at issue in this petition.  (*Id.*)  Nonetheless, when he was sentenced on the CSC-I and CSC-II convictions, the trial court credited Petitioner for every day he had been in the county jail from March of 2010 through July 28, 2011.  (Sentencing Tr., ECF No. 13-13, PageID.521-522.)

§ 20; state statute, Mich. Comp. Laws § 768.1; and court rule, Mich. Ct. R. 6.004(D). *People v. Cain*, 605 N.W.2d 28, 39 (Mich. Ct. App. 1999); *People v. McLaughlin*, 672 N.W.2d 860, 867 (Mich. Ct. App. 2003). There is also a special statutory provision that requires that an inmate in the custody of the MDOC be brought to trial within 180 days under certain circumstances. Mich. Comp. Laws § 780.131(1).

Petitioner premised his "speedy trial" challenge on the state's failure to comply with the 180-day limit. (Mot. for Relief from J., ECF No. 13-16, PageID.682-683.) Because Petitioner was detained in the county jail, and not incarcerated with the MDOC while he awaited trial, the trial court ruled that the state statutory 180-day rule was not applicable. (Eaton Cty. Cir. Ct. Op. & Order, ECF No. 13-20, PageID.852.)

It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *Estelle,* 502 U.S. at 68. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76). Accordingly, to the extent Petitioner's challenge here is premised on application of the state's 180-day rule, that issue has been decided with finality by the state courts.

Even though Petitioner expressly founded his speedy trial challenge on the 180-day rule, the trial court went on to examine whether Petitioner's speedy trial rights, as established by other provisions of the state constitution, statutes, or rules, were compromised. In deciding those issues, the trial court applied the same test the federal courts apply when deciding speedy-trial

claims under the federal constitution: the four-factor test set forth in *Barker v. Wingo,* 407 U.S. 514, 532-33 (1972).  (Eaton Cty. Cir. Ct. Op. & Order, ECF No. 13-20, PageID.853.)

In *Barker*, the Supreme Court established a four-factor test for determining whether a defendant has been denied the constitutionally guaranteed right to a speedy trial.  A court must consider (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant.  *Barker*, 407 U.S. at 530.  No one factor is dispositive; rather, they are related factors that must be considered together with any other relevant circumstances.  *Id.* at 533.  The courts in Michigan apply the four-factor test "to determine if a pretrial delay violated a defendant's right to a speedy trial[,]" whether the speedy trial right at issue arises from federal or state law.  *Cain*, 605 N.W.2d at 39 (citing *People v. Collins*, 202 N.W.2d 769 (Mich. 1972)).

Although the state courts apply the *Barker* test to evaluate "speedy trial" claims, they apply it a little differently than the federal courts.  The state courts shift the burden of proof with respect to prejudice based on the length of the delay, drawing the line at 18 months. *Cain*, 605 N.W.2d at 39.  Once the delay reaches 18 months, prejudice is presumed and it is the prosecutor's burden to rebut the presumption.  In Petitioner's case, the delay was only 7 months. The trial court rejected Petitioner's speedy trial claim because he had failed to show, or even argue, any prejudice from such a short delay.   (Eaton Cty. Cir. Ct. Op. & Order, ECF No. 13-20, PageID.853.)  With regard to the state constitution, statutes, and rules, that decision binds this Court.

Although the trial court's determination is not binding with respect to Petitioner's speedy trial rights under the federal constitution, it is entitled to deference.  Petitioner can only

obtain habeas relief if the state court's determinations are contrary to, or an unreasonable application of, clearly established federal law.

The federal courts eschew a "bright-line rule." *Brown v. Romanowski*, 845 F.3d 703, 717 (6th Cir. 2017). Instead, the federal "courts must conduct a functional analysis of the right in the particular context of the case." *Id.* (quoting *United States v. Ferreira*, 665 F.3d 701, 709 (6th Cir. 2011) (quoting *Barker*, 407 U.S. at 522)) (internal quotation marks omitted). This is a difference between the federal and state applications of the test, but the difference would not render a state court's application of the test unreasonable or contrary to *Barker*. *See, e.g., Brown v. Bobby,* 656 F.3d 325, 329-30 (6th Cir. 2011) (court concluded Ohio's use of a 270-day rule was not "contrary to" *Barker*).

"[A] delay is presumptively prejudicial when it approaches one year." *United States v. Gardner*, 488 F. 3d 700, 719 (6th Cir. 2007). Delays of less than a year, on the other hand, might be so ordinary that they do not even trigger analysis of the other factors. *Doggett v. United States*, 505 U.S. 647, 651-52 (1992). Indeed, the Sixth Circuit has suggested that a "ten-month delay . . . is likely right at the line to trigger an analysis of the remaining factors." *United States v. Brown*, 498 F.3d 523, 530 (6th Cir. 2007). Thus, the state court's application of the *Barker* test is entirely consistent with federal application of the test. Accordingly, Petitioner is not entitled to habeas relief on his speedy trial claim.

VI.    Sufficiency

Petitioner never raised a challenge to the sufficiency of the evidence until his motion for relief from judgment. On direct appeal, he raised a related claim—that the verdict was against the great weight of the evidence. The Michigan Court of Appeals rejected that claim:

> A defendant may be entitled to a new trial where the verdict is against the great weight of the evidence presented at trial; a court may grant a new trial on that basis

15

if "the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." *People v Lemmon*, 456 Mich 625, 642; 576 NW2d 129 (1998). However, claims that a witness is not credible will rarely warrant a new trial under this standard. As our Supreme Court explained: "absent exceptional circumstances, issues of witness credibility are for the jury, and the trial court may not substitute its view of the credibility 'for the constitutionally guaranteed jury determination thereof.'" *Id*. (citation omitted). Moreover, the majority of CSC cases will be "fought on the battlefield of witness credibility" and courts must be careful to defer to the jury's resolution of credibility in those cases. *Id*. at 642-643 n 22. A court may only grant a new trial on the basis of incredible witness testimony where the testimony "contradicts indisputable physical facts or laws," "is patently incredible or defies physical realities," "is material and is so inherently implausible that it could not be believed by a reasonable juror," or has been "seriously impeached." *Id*. at 643-644 (quotation marks and citations omitted).

Here, the victims' testimony established the elements of each charged offense. There was testimony that Conklin sexually penetrated the first victim on at least two occasions and that she was under age 13. MCL 750.520b(1)(a). The first victim testified that Conklin put his penis inside her vagina more than once. She stated that it would happen while she was watching cartoons at his house, and he would take her clothes off. She also testified that he tried to put his penis in her mouth, and was successful on one occasion. She was able to describe Conklin's penis and demonstrated what he did to her using anatomically correct dolls. While her description of the events to previous people, including a psychologist, may have been different, the jury had the opportunity to hear about these limitations and her testimony otherwise did not fall within one of the exceptional circumstances. Therefore, we must defer to the jury's resolution of her credibility. *See Lemmon*, 456 Mich at 646-647 (stating that courts must leave the test of credibility where statute, case law, common law, and the constitution repose it—with the jury).

Likewise, the second and third victims' testimony similarly established the elements of the two CSC II charges. MCL 750.520a(q); MCL 750.520c(1)(a). The second victim testified that Conklin would take his clothes off and get on top of her and kiss her while she was watching cartoons. She stated that he would rub her private area and it hurt her. She also testified that he placed a vibrating massager on her vagina and held it there for a little bit. She was able to identify this massager, which had been recovered from Conklin's house. The third victim testified that she went to Conklin's home to watch cartoons and he touched her private area. Another witness saw Conklin lying on top of the third victim when the witness looked through his window and another witness thought she heard the third victim say "ow." As with the first victim, the jury was entitled to accept these witnesses' testimony as credible. *See Lemmon*, 456 Mich at 646-647.

(Mich. Ct. App. Op., ECF No. 13-14, PageID.525-526.)

16

The assertion that the verdict was against the great weight of the evidence does not state a ground for habeas corpus relief.  The extraordinary remedy of habeas corpus lies only for a violation of the Constitution.  28 U.S.C. § 2254(a).  The Michigan courts apply the great-weight-of-the-evidence standard to determine whether to grant a new trial.  *See People v. Lemmon*, 576 N.W.2d 129, 137 (Mich. 1998).  This question is distinct from the due-process guarantee offended by insufficient evidence and "does not implicate issues of a constitutional magnitude."  *Id.* at 133 n.8.  As a consequence, a "weight of the evidence claim" is purely a matter of state law and is not cognizable on habeas review.  *See* 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with federal law that renders a state's criminal judgment susceptible to a collateral attack in the federal courts.").  Undoubtedly, for that reason, Petitioner shifted his focus from the weight of the evidence to its sufficiency in his motion for relief from judgment.

Although weight and sufficiency present distinct issues, the state appellate court's determinations with regard to the weight of the evidence have significant implications with regard to its sufficiency.  The trial court recognized as much when considering Petitioner's sufficiency challenge:

> Petitioner specifically makes the following conclusion in his amended motion:
>
> Because none of the elements of the crimes charged were met, [Petitioner's] convictions are in violation of his Fourteenth Amendment right to due process. Petitioner's Amended Motion, p 2.
>
> However, when the Court of Appeals denied Petitioner's prior appeal regarding the great weight of the evidence claim, the Court of Appeals made a finding on this issue.  The Court of Appeals analyzed the elements with the facts on the record and concluded that "the victims' testimony established the element of each charged offense."  *Conklin*, unpub op at 1.
>
> Here, the Court agrees with the findings of the Court of Appeals.  The victims' testimony establishes each element of CSC I and CSC II as explained by the Court of Appeals.  *Id*. at 1-2.  Further, the victims' testimony can, by itself, be sufficient to support a conviction of criminal sexual conduct.  *People v. Brantley*, 296 Mich App 546, 551 (2012); mcl 750.520H.  Therefore, when looking [at the evidence in]

a light most favorable to the prosecution, the Court finds that the evidence was sufficient to allow a rational trier of fact to conclude beyond a reasonable doubt that Petitioner engaged in both CSC I and CSC II.

(Eaton Cty. Cir. Ct. Op. & Order, ECF No. 13-20, PageID.854.)

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case:  First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Once again, the state trial court's determinations with regard to sufficiency are entirely consistent with clearly established federal law.  The court examined the evidence supporting the conviction—here, principally, the testimony of the victims—in a light most favorable to the prosecution, with specific reference to the elements of the charged crimes as established by state law.  *Jackson* requires nothing more.  Moreover, the state court's determinations of fact with regard to the content of the victims' testimony are entirely reasonable on the record.  Accordingly, Petitioner is not entitled to habeas relief on his sufficiency-of-the-evidence challenge.

## VII.    Ineffective Assistance of Trial Counsel

Petitioner next contends that this trial counsel rendered ineffective assistance in violation of Petitioner's Sixth Amendment right to counsel.  As discussed above, the Supreme Court in *Strickland* established a two-prong test by which to evaluate claims of ineffective assistance of counsel: the petitioner must prove (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel*, 350 U.S. at 101); *see also Nagi*, 90 F.3d at 135 (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief

if counsel's error had no effect on the judgment. *Id.* at 691.  Counsel's failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel. *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010).

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

Petitioner raised various challenges to trial counsel's effectiveness in his state court pleadings:

> Trial counsel Mr. G. Michael Hocking (P26951), 1). Failed to request discovery or conduct an investigation prior to trial, 2). Failed to meet with Mr. Conklin prior to court dates, 3). Failed to hire an expert in child psychology to combat the State[']s expert witness, 4). Failed to call witness [SM] or Ms. Parcell who interviewed [SM], 5). Failed to file a motion to dismiss for a speedy trial act, 180-day rule violation, 6). Failure to file a motion to suppress evidence based on an MRE 803A violation.

(Pet'r's Mot. for Relief from J., ECF No. 13-16, PageID.669.)

### A.   Counsel's investigation, conduct of discovery, and consultation with Petitioner

The trial court resolved Petitioner's first and second challenges, regarding counsel's investigation, conduct of discovery, and meetings with Petitioner, as follows:

To prevail on a claim that counsel was ineffective, a defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *People v Rodgers*, 248 Mich App 702, 714 (2001). A defendant must also demonstrate that, but for counsel's error, the result of the proceedings would have been different, and that the attendant proceedings were fundamentally unfair or unreliable. *Id*.

**Failing to request discovery, conduct an investigation, and meet with Petitioner**

Petitioner concludes in his brief that had his trial counsel investigated and met with him prior to court dates, all of these issues would not be before the Court. Petitioner's Brief, p 3. However, Petitioner does not provide any evidence to support these allegations. As stated, trial counsel is presumed to be effective, and a defendant bears a heavy burden to prove otherwise. *McGhee*, 268 Mich App at 625.

Despite the People not having the burden to prove that Petitioner's trial counsel was effective, the People nonetheless provide documentation rebutting Petitioner's unsupported allegations. Specifically, the People attached trial counsel's discovery demands for each file. People's Exhibits J and T. In addition, the People attached a sworn affidavit from the executive secretary from the Eaton County Prosecutor's Office stating that the discovery was sent to Petitioner's trial counsel. People's Exhibit K.

The People also attached trial counsel's billing statement, which indicates that Petitioner's trial counsel reviewed discovery, held client conferences, negotiated with the prosecutor, conducted motion research, and prepared for trial. People's Exhibit U. Accordingly, Petitioner fails to meet his burden of demonstrating that his trial counsel was ineffective for failing to request discovery, conduct an investigation, and meet with Petitioner. Petitioner further fails to demonstrate that there would have been a different result had his trial counsel spent more time preparing for trial.

(Eaton Cty. Cir. Ct. Op. & Order, ECF No. 13-20, PageID.855-856.)

Although the trial court applied state precedent in determining whether Petitioner's trial counsel was effective, the standard employed was essentially identical to *Strickland*. Thus, it cannot be said that the state court used the wrong standard. Moreover, the state court applied the standard reasonably. The trial court reviewed the evidence of counsel's preparation and reasonably determined that, contrary to Petitioner's unsupported assertions, counsel had investigated the claims, met with Petitioner, and prepared for trial. The determination that

counsel's performance did not fall below an objective standard of reasonableness under the circumstances reasonably found by the trial court is not contrary to, or an unreasonable application of, *Strickland*, the clearly established federal law with regard to constitutionally ineffective assistance of counsel.  Accordingly, Petitioner is not entitled to habeas relief with respect to his claim that trial counsel rendered ineffective assistance.

### B.    Counsel's failure to call witnesses

The trial court concluded that counsel's failure to call TiM and TaM's brother, SM, and SM's counselor, was a matter of trial strategy:

> Petitioner next argues that his trial counsel's performance was deficient for failing to call defense witnesses . . . . Petitioner first states that trial counsel was ineffective for failing to call a child witness, S.M., and Ms. Parcell because they were together in a therapy session in which S.M. allegedly admitted to having sex with one of the other children.  Petitioner argues that this alleged statement would lead the jury to believe that T.M. had a reason to lie.  Petitioner's Brief, pp 11-12. . . . However, to demonstrate that trial counsel was ineffective, a defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy.  *People v Riley*, 468 Mich 135, 140 (2003).  Decisions regarding what evidence to present and whether to call witnesses are presumed to be matters of trial strategy.  *People v Rockey*, 237 Mich App 74, 76 (1999). . . .  A reviewing court will not second-guess counsel on matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight.  *People v Horn*, 279 Mich App 31, 39 (2008). The fact that the trial strategy did not work does not constitute ineffective  assistance of counsel. *People v Williams*, 240 Mich App 316, 332 (2000).
>
> Here, the Court finds that Petitioner fails to overcome the strong presumption that trial counsel's decisions constituted sound trial strategy.  Regarding the failure to call S.M. and Ms. Parcell as witnesses, a review of the record indicates that it was counsel's trial strategy to not call these witnesses.  Counsel's words and actions before and during trial are the most accurate evidence of what counsel's strategies and theories were at trial.  *People v Grant*, 470 Mich 477, 487 (2004). During closing arguments, Petitioner's trial counsel specifically argued the following:
>
>> What did [S.M.] say?  [S.M.] didn't say anything because they didn't call [S.M.], and you can base a reasonable doubt on evidence or lack of evidence.  Where's [S.M.]?  Where's the other eyewitness?  Why didn't they call him?  I don't have to call him.  I don't have to prove anything. He doesn't have to prove anything.  But where's [S.M.]?  If that's true, bring him in here.  Jury Trial Transcript, Vol. IV of lV, p 106.

> This argument indicates that it was trial counsel's strategy to imply that the People did not call S.M. because the testimony would not have been favorable to the People.  Using this strategy, it follows that trial counsel would not call Ms. Parcell for the purpose of testifying about S.M. In hindsight, this strategy did not work.  However, a failed trial strategy does not amount to ineffective assistance of trial counsel.  *Williams*, 240 Mich App at 332.

(Eaton Cty. Cir. Ct. Op. & Order, ECF No. 13-20, PageID.856-857.)

Decisions as to whether to call certain witnesses or what evidence to present are presumed to be a matter of trial strategy, and the failure to call witnesses or present evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense.  *See Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002). A defense is substantial if it might have made a difference in the outcome of the trial. *Matthews v. Abramajtys,* 319 F.3d 780, 790 (6th Cir. 2003) (citing *Strickland*, 466 U.S. at 693-96).  Foregoing the testimony of SM and his counselor did not deprive Petitioner of a substantial defense.  TiM testified that both TaM and SM were at the other end of the couch while she was being penetrated.  TaM, however, indicated that she had never seen TiM and Petitioner "doing anything" at the trailer.  (Trial Tr. II, ECF No. 13-9, PageID.352.)  To have SM provide similar testimony would have been only cumulative.  On the other hand, defense counsel's invitation to question why the prosecutor chose to not call SM, introduces an entirely new level of doubt.  Therefore, the trial court's determinations with regard to counsel's strategic reasons to not call SM (or his counselor) are reasonable on this record.  The trial court's further conclusion that trial counsel was not constitutionally ineffective is neither contrary to, nor an unreasonable application of, *Strickland*.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

### C.    Counsel's failure to hire an expert

Petitioner argues that his counsel should have hired an expert to counter the expert testimony offered by the prosecution.  Essentially, Petitioner claims counsel should have hired an expert to testify that the victims were making up their claims of abuse.  The trial court also rejected this claim:

> The Court further finds that Petitioner fails to overcome the presumption of counsel's sound trial strategy for not call[ing] another expert.  The big picture of Petitioner's trial theory appears to be that he did not sexually abuse the children and that the children were lying or unreliable.  Trial counsel decided to present and argue this theory by focusing on the cross examination of the People's expert[s] rather than calling an additional expert.  Petitioner now concludes that he was prejudiced because an expert could have offered another theory.

> However, Petitioner fails to demonstrate how an additional expert would have changed the outcome of trial.  Petitioner only argues that an expert could have offered a different theory, but he offers no support for this position.  Petitioner further fails to support the position that trial counsel's failure to call an expert was deficient and deprived him of a defense.  As stated, the Court cannot second-guess counsel's trial strategy with the benefit of hindsight.  *Horn*, 279 Mich App at 39.  Accordingly, Petitioner fails to demonstrate that his trial counsel's performance fell below an objective standard of reasonableness and that there would have been a different result but for the decision to not hire an expert.

(Eaton Cty. Cir. Ct. Op. & Order, ECF No. 13-20, PageID.857-858.)

Petitioner has failed to show that the trial court's factual determinations regarding counsel's strategy are unreasonable.  Review of Petitioner's counsel's cross-examination of the prosecution's experts reveals that counsel was able to highlight concerns regarding the inconsistencies in the disclosures by TiM and TaM and the possibility of coaching.  Moreover, with or without expert testimony, the trial court instructed the jurors to consider whether it is deception or simply mistake when testimony is inconsistent.  (Trial Tr. V, ECF No. 13-11, PageID.499.)

Without regard to the reasonableness of counsel's actions, however, Petitioner has failed to demonstrate any prejudice from counsel's failure to call a defense expert.  "When deciding

ineffective-assistance claims, courts need not address both components of the inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004) (quoting *Strickland*, 466 U.S. at 697). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697. Here, Petitioner's failure to demonstrate prejudice is evident. There is nothing in the record as to what testimony an expert might have provided. "A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (6th Cir. 1991) (footnote omitted); *see also Paillette v. Berghuis*, 408 F. App'x 873, 887 (6th Cir. 2010) ("The salient point is that nobody knows what she would have said. Speculation cannot suffice to establish the requisite prejudice."). Petitioner offers only speculation; that is manifestly insufficient. He is not entitled to habeas relief on his claim that his trial counsel was ineffective for failing to call an expert witness.

### D.    Counsel's failure to raise the speedy trial issue

As explained above, Petitioner's "speedy trial" claim is meritless. The trial court rejected the "speedy trial" based ineffective assistance claim for that reason:

> Petitioner also argues that trial counsel's failure to file a motion to dismiss for a speedy trial violation was ineffective assistance of counsel. However, as discussed, Petitioner's argument regarding a speedy trial violation lacks merit. Petitioner has the burden to demonstrate that he was prejudiced by a delay less than 18 months. *McLaughlin*, 258 Mich App at 644. Petitioner's delay was less than 7 months, and he fails to demonstrate or prove how he was prejudiced. Accordingly, trial counsel was not deficient for failing to raise a meritless motion.

(Eaton Cty. Cir. Ct. Op. & Order, ECF No. 13-20, PageID.858.) "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013). The state court's determinations, therefore, are not contrary to, or an unreasonable application of, *Strickland*.

E.    **Counsel's failure to challenge admissibility under Michigan Rule of Evidence 803A**

Finally, Petitioner claims his counsel was ineffective for failing to move to suppress hearsay testimony involving the children's statements for failure to fit with the hearsay exception provided by Michigan Rule of Evidence 803A.  The trial court determined Petitioner's claim was without merit:

> Lastly, Petitioner argues that his trial counsel was ineffective for failing to move to suppress hearsay testimony involving the children's statements.  This issue is governed by MRE 803A, which states in part:
>
>> A statement describing an incident that included a sexual act performed with or on the declarant by the defendant or an accomplice is admissible to the extent that it corroborates testimony given by the declarant during the same proceeding, provided:
>>
>> (1) the declarant was under the age of ten when the statement was made;
>>
>> (2) the statement is shown to have been spontaneous and without indication of manufacture;
>>
>> (3) either the declarant made the statement immediately after the incident or any delay is excusable as having been caused by fear or other equally effective circumstance; and
>>
>> (4) the statement is introduced through the testimony of someone other than the declarant.
>
> Petitioner specifically argues that had defense counsel objected to the admission of the testimony, the trial court could have rejected its admission resulting in dismissal.  Petitioner's Brief, p 7.
>
> However, Petitioner never demonstrates how MRE 803A was allegedly violated. There is no evidence that this testimony would have been suppressed had trial counsel moved for its suppression.  Petitioner merely concludes that he was prejudiced because, again, the trial court could have suppressed the statements. Further, even if Petitioner could demonstrate that the MRE 803A testimony should have been suppressed, Petitioner fails to demonstrate how the result of the trial would have been different but for its admission. As stated, the victims' testimony alone is enough to support a conviction.  *Brantley*, 296 Mich App at 551.
>
> Additionally, Petitioner fails to overcome the presumption that allowing the MRE 803A testimony by not moving to suppress was sound trial strategy.  The record indicates that this hearsay testimony actually contradicted parts of the children's

testimony, which the Court of Appeals addressed in its opinion.  *Conklin*, unpub op at 1.  Allowing contradicting testimony advances trial counsel's overall strategy or theory that the children were lying or unreliable.  Therefore, Petitioner fails to overcome the strong presumption that trial counsel's performance was effective and constituted sound trial strategy.

(Easton Cty. Cir. Ct. Op. & Order, ECF No. 13-20, PageID.859-860.)

The trial court identifies the critical flaw in Petitioner's argument in one sentence: "Petitioner never demonstrates how MRE 803A was allegedly violated."  (*Id.*, PageID.859.) Simply because there was testimony where other witnesses reported the victims' out-of-court statements does not mean that Rule 803A was violated.  Drs. Guertin and Haugen testified regarding out-of-court statements; however, those statements would have been admissible under Mich. R. Evid. 803(4) regarding statements made for purposes of medical treatment or diagnosis. Petitioner references the testimony of Officer Burton and Gina Harrington.  Both participated in forensic interviews of one or more of the victims.  Officer Burton, however, did not testify regarding the statements made by the victims.  Gina Harrington did testify regarding such statements; however, she was called by Petitioner's counsel specifically for that purpose. Counsel's purpose in eliciting that testimony was obvious: to put in front of the jury another inconsistent story told by the victims.  The trial court's determinations regarding the strategic purpose of counsel's actions are entirely reasonable on the record.

Even if counsel were not pursuing a specific strategy when he failed to object to introduction of any victim's out-of-court statement, Petitioner could not prevail on his ineffective assistance claim because, as the trial court noted, he could demonstrate no prejudice.  The victims' testimony at trial alone sufficiently supported the verdicts.  Nothing regarding Petitioner's conduct came in by way of the out-of-court statements that was not already part and parcel of the victims' in-court testimony.  The trial court's determinations that Petitioner failed to show that counsel's

conduct was professionally unreasonable or that Petitioner had suffered any prejudice are entirely consistent with *Strickland*.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

VIII.    Ineffective Assistance of Appellate Counsel

The effectiveness of appellate counsel's assistance is also judged by the *Strickland* standard.  On appeal, however, an appellant has no constitutional right to have every non-frivolous issue raised.  "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)).  To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions."  *Strickland*, 466 U.S. at 688.  As the Supreme Court recently has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000).  In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present."  *Id.*

Here, Petitioner contends appellate counsel rendered constitutionally ineffective assistance for failing to raise the issues discussed above.  The trial court concluded, as this Court has also concluded, that those issues are meritless.  (Eaton Cty. Cir. Ct. Op. & Order, ECF No. 13-20; Eaton Cty. Cir. Ct. Op. & Order, ECF No. 13-22, PageID.936-937.)  Accordingly, the trial court found that appellate counsel's decision to forego those issues was not unreasonable and that Petitioner had failed to demonstrate any prejudice flowing from appellate counsel's failure to raise the issues.  (Eaton Cty. Cir. Ct. Op. & Order, ECF No. 13-20, PageID.860-861.)  As noted above, "[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial."  *Coley*,

706 F.3d at 752.  Thus, the state court's rejection of Petitioner's ineffective assistance of appellate counsel claim is entirely consistent with *Strickland*.  Petitioner is not entitled to habeas relief.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

**Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied.

I further recommend that a certificate of appealability be denied.


Dated: October 23, 2018                                    /s/ Ellen S. Carmody
                                                           ELLEN S. CARMODY
                                                           U.S. Magistrate Judge



**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).